BENJAMIN B. THURSTON *v.* HORACE THURSTON & others.

A devise of a farm to B. B. T. "in special trust and confidence for my son H. T., and after him, in fee to his heirs;" with an order to the trustee to pay to H. T. the annual rent of the farm, "and in the event of his decease without issue," the farm to "revert equally to all the other surviving children of the testatrix," gives to H. T. an *equitable* estate for life, and to his heirs of the body a *legal* remainder in fee; the rule in Shelley's case not applying on account of the different qualities of the two estates.

In such case the necessary repairs of the buildings upon the farm are a charge upon the estate of H. T. the life-tenant, during its continuance; and the trustee is justified in applying, from time to time, such portion of the rent as may be necessary to make such repairs. The trustee has, however, no power to sell the interest of the life-tenant in any portion of the farm, to make such repairs, nor will a court of equity authorize him to do so; the life-tenant being *sui juris*, and there being no restraint upon his alienation of his estate.

A court of equity has no jurisdiction, in such case, upon the application of the trustee of H. T. to authorize him to sell for such repairs the interest of the minor children of H. T. in any portion of the farm; the trust not extending to their estate, and the modern doctrine being, even in case of a trust for an infant, that where no duty or charge is incumbent upon the inheritance of an infant, the court has no power to authorize it to be sold by the trustee merely upon the ground of some benefit which may accrue to the infant therefrom.

In Rhode Island, by Rev. Stats. ch. 151, sect. 10, the power to authorize the sale of the real estate of infants, for any proper purpose, is conferred upon the courts of probate; and in cases within the spirit, though not within the letter of the statute, and in similar cases, the General Assembly is constitutionally competent to give to guardians and trustees special authority to sell the real estate of their wards and cestuis for proper purposes; this being the exercise of a legislative and not of a judicial power.

THIS was an amicable bill filed by a trustee under the will of Sarah Thurston, late of Hopkinton, deceased, for leave to sell a portion of the trust estate for, or to apply the rents and profits thereof to, the repair of the buildings thereon, and for instructions.

From the bill and answers, upon which the case was submitted, it appeared that the testatrix, amongst other things, by her last will and testament, devised the Babcock farm, so called, in Hopkinton, containing about two hundred and ninety acres, and of the value of about three thousand dollars, and having upon it a dwelling-house and other buildings, to the complainant, in trust, in the following words : —

"Item. I give, devise, and bequeath to my son Benjamin B. Thurston, in special trust and confidence for my son Horace

Thurston, the Babcock farm, so called, which I inherited from my father, and after him, in fee to his heirs; the annual rent of which I do hereby order and direct my said trustee to pay to my son Horace Thurston, and in the event of his decease without issue, it is my will that said farm shall revert equally to all my other surviving children."

The buildings on said farm were greatly out of repair and were falling rapidly into decay; and the *cestui que trust*, Horace Thurston, having no means with which to repair them independent of the trust estate, and requiring the rents and profits of it for his support, this bill was filed by the trustee against Horace Thurston and his minor children, for leave to sell a portion of it to make the necessary repairs, and for directions as to his power and duty in the premises.

*Thurston*, for the parties.

The question presented by the bill and answers is this: —

Will a court of equity aid a trustee in disposing of a portion of the trust property for the purpose of making the residue of the estate of some productive value to those who are interested in the remainder, when it satisfactorily appears to the court that unless this relief is afforded the estate of the minor children must be greatly impoverished?

Previous to the decision by this court of the case of *Taylor* v. *Place*, (4 R. I. Rep. 324,) the General Assembly, acting as a court of chancery, entertained petitions of this character on the part of trustees. An application in behalf of Asa Potter, under this same will, was granted by the legislature at the May session, A. D. 1851, (Schedule of 1851, page 44,) and instances of relief in similar cases have been in our history so numerous, and the practice is so familiar to the court, that a more particular citation of instances is unnecessary. In fact, this very complainant petitioned at the last session of the assembly for the very relief which he now seeks, but was refused, not on account of any doubt in the mind of the assembly as to the propriety of granting the petition, but in consequence of a dislike to interfere in view of the decision in *Taylor* v. *Place*, above referred to.

The propriety of the application, as the only means of secur-

ing to the minor children interested in the premises the full value of their estate, need not be argued. The legislature, as has been already stated, admitted the propriety of some relief, and the town council of the town of Hopkinton indorsed on the petition their full recommendation. The bill and answers also set forth all the necessary facts which the court would desire to know in deciding upon the merits of the case.

Has this court the power to afford assistance to the trustee ?

On this point it is submitted, that the exercise by the legislature of the power to change investments of trust property, from the earliest period of our history down to the time of the decision above referred to, is in itself the best evidence that such a power can be in this state properly exercised by the appropriate tribunal.

Now, certainly, although it is undeniably true that such a power, and in fact no other judicial authority could with propriety be exercised by the legislature after the adoption of the constitution, yet it was intended that the power which formerly belonged to the legislature should be transferred to the judicial department of the government. In determining therefore any question as to chancery jurisdiction in this state, it is proper to inquire into the practice of the assembly on similar questions before the adoption of the constitution ; and if that body afforded relief, then the judiciary, as a necessary inference, has the same power now. To deny this doctrine, would be to assert that the charter government was better suited to the wants of the citizen than the present constitution.

Mr. Justice Story (Eq. Juris. § 978) says, where the *cestui que trust* is of age, or *sui juris*, the trustee has no right, unless express power is given, to change the nature of the estate, as by converting land into money or money into land, so as to bind the *cestui que trust*. But where the *cestui que trust* is not of age, or *sui juris*, it is frequently necessary to his interests that the trustee should possess the power, and in case his interests require the conversion, the acts of the trustee, *bonâ fide* done for such purpose, seem to be justifiable.

2 Fonbl. Eq. B. 2, ch. 7, § 1, note *a*, says, in addition to the

doctrine stated by Mr. Justice Story, " the true criterion is, whether the interests of the *cestui que trust* required the conversion ;" and *vide* the cases there cited.

Now the present application comes within the above rule: the *cestuis que trust* are minor children, unable either in law or from understanding to act for themselves, and unless their best interests can be aided by a sale of a portion of the estate for the benefit of the residue, the object of the testator will be defeated.

The complainant asks that he may be authorized to make sale of so much of the estate as will amount to the sum of seven hundred dollars, the proceeds to be expended in restoring the buildings on the residue, he to give bond to this court for the faithful application of the proceeds of sale, and the sale, as well as the application of the money (if the court see fit), to be under the direction, and with the advice, of the town council of the town of Hopkinton. If the court dislike to order a sale of any part of the farm, then the complainant would suggest that he have authority to give a mortgage security upon the farm to any person who will advance the money for the purposes required. In the matter of Kane, 2 Barb. Ch. R. 375; *Rice* v. *Tonnele & others*, 4 Sandf. Ch. R. 568; *In re Burke*, Ib. 617; *Hayward* v. *Cuthbert*, 4 Dessau. 440; *In re Bostwick*, 4 Johns. Ch. R. 100; *Tery* v. *Norcom*, 2 Iredell, Eq. 354; *Withers* v. *Hickman*, 6 B. Monr. 292; *Newport* v. *Cook*, 2 Ashmead, 332; *McDowell* v. *Caldwell*, 2 McCord, 43; *Williamson* v. *Berry*, 8 Howard, 495, 531, Nelson, J.; *Buckworth* v. *Buckworth*, 1 Cox, 80; *Franklin* v. *Green*, 2 Vern. 137; *Harvey* v. *Harvey*, 2 P. Wms. 21; *Fairman* v. *Green*, 5 Ves. 44; *Greenwell* v. *Greenwell*, 10 Ib. 194, 195; *Fendall* v. *Nash*, Ib. 197, n. a.; *Ex parte Kebble*, 11 Ib. 604; *Marshall* v. *Holloway*, 2 Swanst. 436; *Turner* v. *Turner*, 4 Sim. 430.

Ames, C. J. The bill assumes, and we think correctly, that under the will of his mother, Horace Thurston is tenant for life of the Babcock farm in Hopkinton, and that his children or issue are entitled therein to a remainder in fee. His estate is an equitable one; the order to pay over the rents to him requiring to its performance the legal estate to be in the trus-

tee; but as the order does not apply to the heirs or issue of Horace, there is nothing to prevent the subsequent limitation from being executed in them. *Shapland* v. *Smith*, 1 Brown, Ch. C. 74; *Doe* d. *Leicester* v. *Briggs*, 2 Taunt. 109; *Brown* v. *Ramsden*, 3 Moo. 612; *Tenny* d. *Gibbs* v. *Moody*, 3 Bingh. 3; *Doe* d. *Greatrex* v. *Homfray*, 6 Ad. & Ell. 206. The estate of Horace being equitable, and of his heirs, who are to take the fee after him, being legal, the rule in Shelley's case does not apply; and the latter take contingently as purchasers. Fearne on Contingent Rem. ch. 1, sect. 5, art. 9, p. 52. The limitation over upon the death of Horace without issue, indicates that by the term " heirs," the testatrix intended " heirs of the body " of Horace.

Horace Thurston being then tenant for life of the farm in question, the expense of keeping the buildings thereon in tenantable repair, must, as between him and those entitled in remainder, be a charge upon his estate. *Bostock* v. *Blakeney*, 2. Bro Ch. C. 653; *Hibbert* v. *Cooke*, 1 S. & Stu. 552; *Nairn* v. *Majoribanks*, 3 Russ. 582; *Caldicott* v. *Brown*, 2 Hare, 144. If we construe the trust to authorize the complainant to manage and let the property, and to pay over the annual rents as they accrue to the life tenant, the complainant would be justified in applying from time to time so much of them to such repairs as would be necessary to the performance of this duty by the life tenant. No power of sale having been conferred upon the complainant as trustee, he cannot sell the estate of his *cestui*, even to make the most necessary repairs; and, as the *cestui* is *sui juris*, and there is no restraint against his alienating his estate, a court of equity would not, if for no other reason, authorize the trustee to do what his *cestui* himself could do, if his estate were not worth retaining, or he was not in a situation to bear the burdens which it imposed.

It may possibly be, that although it is no part of the duty of the infant defendants, as contingently entitled to a remainder in fee in this farm, to pay for necessary repairs upon the buildings on it during the pendency of the life-estate, yet that rather than the buildings should fall into decay, it would be a benefit to them, that a portion of the farm should be sold

to enable the making of such repairs.   What jurisdiction, how-
ever, has this court to authorize the trustee of their father's
life estate to sell their interest, to which his trust does not
extend, for such a purpose ?   What right has the court, calcu-
lating remote and contingent advantages to them, to convert
their property, in order to apply its proceeds to repairs which
are incumbent upon the estate of another, although that other
may be their father ?

Even where the trustee of the real estate of an infant, not
empowered to sell, applies to the court for leave to sell it, upon
the ground of its being for the infant's benefit that it should
be converted for better investment, although there is some con-
trariety of decision, the best approved doctrine would seem to
be, that the court has no jurisdiction to authorize such a con-
version.   In *Taylor* v. *Philips*, 2 Ves. Senior, 23, Lord Hard-
wicke' is reported to have said, that " there is no instance of
this court's binding the inheritance of an infant by any dis-
cretionary act of the court.   As to personal things, it has been
done ;  but never as to the inheritance ;  for that would be
taking on the court a legislative authority, doing that which is
properly the subject of a private bill."   Indeed, whatever doubts
may have been entertained on the subject formerly, the modern
doctrine clearly is, that where a trust exists, the degree of
authority, as well as the manner of its exercise, depends on the
terms of the instrument creating it.   In other cases the court is
thrown on its inherent jurisdiction, and has authority to man-
age the estate during minority, and to apply its proceeds to the
infant's benefit; but there is no inherent power to dispose of or
alter the estate itself; except in cases of election and partition,
where the disposition is demandable as of right by other par-
ties, and of the devolution on an infant of a mortgaged estate,
where a sale is the only protection against foreclosure.   *Simson*
v. *Jones*, 2 Russ. & Myln. 365 ;  *Calvert* v. *Godfrey*, 6 Beav. 97 ;
*Peto* v. *Gardner*, 2 Y. & Col. 312 ;  *Garmstone* v. *Gaunt*, 1 Coly.
577 ;  Adams's Equity, 284, 285;  *Williamson* et al. v. *Berry*, 8
Howard, 537, 554, 555, 586 ;  see, however, *Inwood* v. *Twyne*,
Ambl. 417 ;  *Terry* v. *Terry*, Prec. Ch. 273 ;  Matter of Salis-
bury, 3 Johns. Ch. R. 347 ;  *Huger* v. *Huger*, 3 Dessaus. 18 ;

*Stapleton* v. *Langstaff*, Ib. 22, denied in *Rogers* v. *Dill*, 6 *Hill*, 615; and see Williams's case, 3 Bland, 186.

In this state the power to authorize the mortgage or sale by guardians of the real estate of infants, " to pay their debts, the expenses of supporting them or their families, or for any other proper purpose whatever, including the making of a better or more advantageous investment, and the settlement of their estates with incidental charges," is, by statute, confided to the courts of probate; Rev. Stats. ch. 151, sect. 10; and similar statutes are to be found in most of the states of the Union. Hill on Trustees, 396, n. 1. If the purpose for which the sale of their property is asked be a proper one, the language of this statute is certainly broad enough to include the case of the infant defendants presented by this bill; a guardian being first appointed and qualified to apply for them to a court of probate. Rev. Stats. ch. 138, sect. 6. If a case should arise within the spirit, though not within the letter of such, or a similar, statute, a special authority to a trustee to convert the real estate of his infant, lunatic or otherwise incapable *cestui*, would seem to partake, as intimated by this court in *Taylor* v. *Place*, 4 R. I. Rep. 332–334, more of a legislative than of a judicial character, and would be, having been long exercised and not prohibited by the constitution, within the constitutional competence of the General Assembly. *Watkins* v. *Holman et al.* 16 Pet. 25; *Davis* v. *Johannot*, 7 Met. 388; *Snowhill* v. *Snowhill*, 2 Green's Ch. R. 20; *Norris* v. *Clymer*, 2 Barr, 277; *Spotswood* v. *Pendleton*, 4 Call, 514; *Dorley* v. *Gilbert*, 11 Gill. & Johns. 87.

With these instructions, our office is performed by dismissing this bill; but as the bill has been filed to carry out the views of both the adult parties, with the understanding that no expense with regard to it is in any form to be visited upon the estates of the infants, it must be dismissed without costs.